In re HEMPSTEAD et al.

(Circuit Court, E. D. Pennsylvania. August 14, 1899.)

No. 31.

1. CUSTOMS DUTIES—BOARD OF GENERAL APPRAISERS—HEARING OF APPEALS.
    There is nothing in the law governing the board of general appraisers
    which requires that there should be original testimony heard by them in
    every case on appeal, and such testimony is unnecessary where the record
    and exhibits sent up by the collector furnish sufficient basis for their de-
    cision.
2. SAME—CLASSIFICATION—SCIENTIFIC BOOKS.
    The fact that the author of a medical work quotes largely from the
    writings of others, and deals with the results of investigations made by
    others, does not deprive his book of its character as one of "original scien-
    tific research," entitled to free entry, under paragraph 410 of the tariff
    act of 1894.
3. SAME—BOOKS—UNBOUND SHEETS.
    The word "books," as used in the provision of the free list of the tariff
    act of 1894 (paragraph 410), permitting the free entry of "scientific books
    and periodicals devoted to original scientific research," cannot be given such
    a narrow construction as to exclude the unbound sheets of a scientific book.

This was a proceeding by the United States to review the decision
of the board of general appraisers reversing the action of the col-
lector in assessing for duty certain merchandise imported by O. G.
Hempstead & Son.

James M. Beck and M. F. McCullen, for the United States.
Frank P. Prichard, for respondents.

GRAY, Circuit Judge. The facts in this case are established by
the record, and are undisputed by either party. They are as follows:
O. G. Hempstead & Son imported into the port of Philadelphia, on
May 26, 1896, certain merchandise, consisting of printed sheets of a
work entitled "A Text-Book on Diseases of the Ear and Adjacent Or-
gans, by Dr. Adam Politzer." After due entry, the merchandise in
question was classified by the local appraiser, and a duty assessed
thereon of 25 per cent. ad valorem, under paragraph 311 of the tariff
act of August 28, 1894. The importers made protest, and appealed
from this classification and assessment of duty, and claimed that the
merchandise was free from duty, under paragraph 410 of the said
tariff act. The appeal then came before the board of United States
general appraisers, and on November 29, 1896, the board reversed
the decision of the collector of this port, and found that the mer-
chandise in question was exempt from duty, under paragraph 410 of
said tariff act. No witnesses were called on behalf of the importers
before the board of United States general appraisers. Three ques-
tions have been raised by the government, viz.: First. That the im-
porter offered no oral testimony before the board of appraisers, and

that, therefore, the board had no right to reverse the decision of the collector. Second. That on the merits the decision of the board of general appraisers to the effect that the book was a book of original scientific research was erroneous. Third. That because the book was imported in unbound sheets it was not a book, and therefore not entitled to free entry.

As to the first question, in the opinion of the court, there is nothing in the law governing the action of the board of appraisers which requires that in every case there should be original testimony heard by said appraisers in the case of an appeal taken to them, or that witnesses should be actually called to testify whether, in the opinion of the board, their testimony was necessary or not. The collector sends up the record, and all papers and exhibits that were before him, and necessary for the decision of the case. It may well happen that such record and papers will afford a sufficient basis for the judgment of the board of appraisers. This is especially true in the present case, where the principal thing to be considered was the character of the book imported, a copy of which was before the board.

As to the second question, paragraph 410 of the customs act of 1894, prescribing a free list, includes "scientific books and periodicals devoted to original scientific research." An inspection of the book will demonstrate that it is a work devoted to original scientific discussion or research, and not merely a compilation. That a book of this kind should necessarily quote largely from the writings of others, and deal with the results of investigations made by others, not only does not deprive the book of its character as one of original scientific research, but may tend to characterize the author as one well qualified for the original work he has in hand. But in this case there was testimony taken under the order of Judge Dallas, before one of the appraisers, and returned to the circuit court for its enlightenment. In this way we have the testimony of three eminent physicians, all tending to establish the finding of the board of general appraisers in regard to the character of the book imported, and, as this testimony is not contradicted or denied by the government, it is sufficient of itself to determine the matter for the court.

As to the third question, that because the book was imported in unbound sheets it was not a book, and therefore not entitled to free entry, it is not necessary to say more than that no such narrow definition of the word "book" can be accepted by the court. The statute itself does not undertake to make any such distinction. The collected sheets containing in orderly and connected fashion the record of the intellectual and literary work of the author is a book unless for some particular and special purpose a narrower definition is prescribed by law. The object of the statute was evidently to remove as far as possible obstruction to the freest possible circulation of the results of original scientific inquiry tending to the advancement of learning and the benefit of humanity. The decision of the board of general appraisers is therefore affirmed.